[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 4, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-13110
Non-Argument Calendar

_____

Agency Nos. A96-095-964
and A96-095-965

EDGAR HERNANDO RODRIGUEZ POSADA,
JACQUELINE LOPEZ SOSSA,
DIEGO ALEZANDER RODRIGUEZ LOPEZ,

                                                    Petitioners,

        versus

U.S. ATTORNEY GENERAL,

                                                    Respondent.

_____

Petition for Review of a Decision
of the Board of Immigration Appeals

_____

**(May 4, 2006)**

Before EDMONDSON, Chief Judge, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

Edgar Hernando Rodriguez Posada ("Rodriguez"), his wife, Jacqueline

Lopez Sossa, and his son, Diego Alexander Rodriguez Lopez, natives and citizens

of Colombia,[1] petition this court for review of the affirmance by the Board of

Immigration Appeals ("BIA") of the Immigration Judge's denial of asylum, denial

of withholding of removal, and denial of relief under the United Nations

Convention Against Torture (CAT).[2]  We dismiss the petition in part and deny it in

part.

We review the BIA's and IJ's[3] factual determinations under the substantial

evidence test.  Al Najjar v. Ashcroft, 257 F.3d 1262, 1283-84 (11th Cir. 2001).

Under the highly deferential substantial evidence test, we "must affirm the BIA's

decision if it is supported by reasonable, substantial, and probative evidence on the

record considered as a whole." Id. at 1284 (quotation omitted). "To reverse the

[BIA's and] IJ's fact findings, we must find that the record not only supports

_____

[1]Rodriguez included his wife and his son as derivatives in his asylum application.  We refer only to Rodriguez in this opinion; but our decision about Rodriguez also applies to his wife and son.

[2] Rodriguez does not contest the denial of CAT relief: this claim is abandoned.  See Sepulveda v. U.S. Attorney Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (petitioner abandons issue by failing to offer argument on that issue).

[3]"We review only the [BIA's] decision, except to the extent it expressly adopts the IJ's opinion." Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). In this case the BIA expressly adopted the IJ's decision; so we review the IJ's analysis as if it were the BIA's.

reversal, but compels it." Mendoza v. U.S. Attorney Gen., 327 F.3d 1283, 1287 (11th Cir. 2003) (emphasis added).

Rodriguez claimed he was targeted by the FARC, a Colombian guerilla group, because of his political acts, as a member of the Liberal Vanguard (a branch of the Colombian Liberal Party), and his employment as a claims adjuster for an insurance company. In August 2001, a man named Carlos Duque, who earlier had discussed doing business with Rodriguez, asked Rodriguez to check the import manifests for an international shipment of goods and then to insure these goods. Rodriguez found too many irregularities in the manifests to insure the goods. On 26 October 2001, Rodriguez met Duque and two other men to discuss the documents. The men told Rodriguez that they belonged to the FARC: they threatened Rodriguez and his family if he did not fix the documents. On 13 November 2001, Duque threatened Rodriguez over the phone with death if he did not prepare the documents. On 7 December 2001, three men accosted Rodriguez near his home, pushed him against a wall, put a gun to his head, and hit him in the head with the gun. The men told Rodriguez that he had until the 10th to prepare the documents and that they would kill him and his son if he did not cooperate. Rodriguez resigned from work. He and his family left their home on 12

3

December, traveled to Mexico later in December, and they illegally entered the United States on 10 January 2002.

Neither Rodriguez nor the government address the IJ's decision, upheld by the BIA, that Rodriguez's asylum claim was not timely filed. See 8 U.S.C. § 1158(a)(2)(B) (alien can apply for asylum if he "demonstrates by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States"). A determination about the untimeliness of an asylum application implicates our jurisdiction, which we are obligated to examine sua sponte. See 8 U.S.C. § 1158(a)(3) (courts lack jurisdiction to review determination under § 1158(a)(2)); Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 410 (11th Cir. 1999) (federal court must "inquire into subject matter jurisdiction sua sponte whenever it may be lacking"). And the clear language of § 1158(a)(3) states that we lack jurisdiction to review the IJ's or the BIA's decision about the timeliness of an asylum request. See Fahim v. U.S. Attorney Gen., 278 F.3d 1216, 1217-18 (11th Cir. 2002). Accordingly, Rodriguez's petition for review on his asylum claim is dismissed.

About the denial of withholding of removal, Rodriguez argues that the IJ and the BIA erred in finding he had not presented enough credible evidence to show past persecution and a reasonable fear of future persecution based on

4

imputed political opinion related to Rodriguez's refusal to cooperate with FARC.

Section 1231(b)(3)(A), 8 United States Code prohibits the Attorney General from removing Rodriguez to a country if his "life or freedom would be threatened in that country because of [his] race, religion, nationality, membership in a particular social group, or political opinion." Under this theory of relief, Rodriguez "bears the burden of demonstrating that he more-likely-than-not would be persecuted or tortured upon his return to the country in question." Mendoza, 327 F.3d at 1287.

Substantial evidence supports the IJ's and the BIA's determination that Rodriguez failed to show he would be persecuted on any of the protected grounds. We see no evidence linking Rodriguez's political views to the FARC threats. Instead, Rodriguez's claim is that the FARC threats were based on his refusal to cooperate with the FARC's economic requests. But "[i]t is not enough to show that [he] was or will be persecuted or tortured due to [his] refusal to cooperate with the guerillas." Sanchez v. U.S. Attorney Gen., 392 F.3d 434, 438 (11th Cir. 2004). These facts do not compel reversal.

An alien who cannot adequately demonstrate past persecution may still be entitled to withholding of removal if he can demonstrate that removal will cause a future threat to his life or freedom on a protected ground. Mendoza, 327 F.3d at 1287. Rodriguez, though, has not made this showing. His testimony indicates

5

that he and his family did not fear FARC persecution so much that they went into hiding before the 10 December deadline: they did not leave their home until 12 December. Accordingly, we deny Rodriguez's petition on withholding of removal.

Based on the foregoing, we dismiss the petition for review for the asylum claim and deny the petition for the withholding of removal claim.

DISMISSED IN PART AND DENIED IN PART.